COOPER TIRE & RUBBER COMPANY, Plaintiff–Appellee,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant–Appellant,

Robert Maza, Defendant

Richard C. Pillsbury, M.D., Defendant–Appellant.

COOPER TIRE & RUBBER COMPANY, Plaintiff–Appellee,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant

Robert Maza, Defendant–Appellant,

Richard C. Pillsbury, M.D., Defendant.

COOPER TIRE & RUBBER COMPANY, Plaintiff–Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY; Robert Maza; Richard C. Pillsbury, M.D., Defendants–Appellees.

Nos. 94–2183, 94–2209 and 94–2240.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1994.

Decided Feb. 27, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied April 25, 1995.*

As Amended May 2, 1995.

---

* Judge McMillian would grant the suggestion for    rehearing en banc.

⬯138

D. Price Marshall, Jonesboro, AR, argued, for St. Paul Fire and Dr. Pillsbury.

Troy A. Price, Little Rock, AR, argued, for Robert Maza.

E. Ben Franks, Texarkana, TX, argued, for appellee.

Before MAGILL and BEAM, Circuit Judges, and PIERSOL,* District Judge.

---

\* THE HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota, sitting by designation.

1. Both Maza and the Director of Labor Relations at Cooper Tire testified that Maza signed a Receipt and Subrogation Agreement each time medical bills were paid on his wife's behalf. App. at 195, 279. Only two of the agreements (representing $57,770.09 in payments) are in the record before us. *Id.* at 419–420. Based on the undisputed testimony of the Director that the agreements in the record are "exemplars" of the agreements signed for each and every payment, we will assume that the relevant language in all the agreements is identical. The two agreements in the record are identical, except for the insertion of relevant dates and amounts. One of these agreements is reproduced in the appendix to this opinion.

---

BEAM, Circuit Judge.

St. Paul Fire and Marine Insurance Company (St. Paul), Richard C. Pillsbury, M.D., and Robert Maza appeal an adverse judgment of the district court. After a bench trial, the district court found that Maza breached his contractual obligations to the ERISA plan of Cooper Tire & Rubber Company (Cooper Tire) by settling his medical malpractice claims against Dr. Pillsbury. The district court further found that Dr. Pillsbury and St. Paul (Pillsbury's malpractice insurer) tortiously interfered with the contract between Maza and Cooper Tire by settling with Maza. Because we find that Maza took no actions contrary to the terms of the ERISA plan, we reverse.

## I. BACKGROUND

Cooper Tire maintains a self-funded and self-administered employee welfare benefit plan (the Plan) which is subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. As an employee of Cooper Tire, Robert Maza received health insurance coverage through the Plan for himself and his wife. In 1988, Maza's wife became seriously ill and died. As a result of her illness, the Mazas incurred covered medical expenses totaling $298,-118.07. Cooper Tire reimbursed the Mazas for these expenses as they were incurred. On receipt of each payment, Cooper Tire required that Maza sign a "Receipt and Subrogation Agreement" releasing Cooper Tire from all claims for the reimbursed expenses and acknowledging Cooper Tire's subrogation rights.[1]

In August 1989, Maza filed a medical malpractice action against Dr. Pillsbury, his wife's physician, in Arkansas state court. Maza sued Dr. Pillsbury individually and on behalf of his wife's estate, alleging that his

wife's death was the result of Dr. Pillsbury's negligence. On his own behalf, Maza sought recovery for medical expenses incurred and for loss of "consortium, society, and companionship." On behalf of the estate, Maza sought recovery of damages for medical expenses, loss of earnings, pain and suffering, mental anguish, and wrongful death. As Dr. Pillsbury's malpractice insurer, St. Paul provided for Pillsbury's legal defense.

In February 1990, Cooper Tire intervened in the state court action based on its payment of the Mazas' medical expenses. As discovery in the case progressed, both Maza and Cooper Tire discussed separate settlements with Dr. Pillsbury. By October 1990, Maza had reached a settlement with Dr. Pillsbury as to all the claims asserted by Maza and the estate except Cooper Tire's claim for medical expenses. Rather than wait for a settlement to be reached on the medical expenses claim, Maza and Dr. Pillsbury entered into a settlement agreement covering all the malpractice claims except Cooper Tire's alleged subrogation claim.

In exchange for $350,000, Maza and the estate released Dr. Pillsbury from all claims, but expressly reserved the "subrogation and other rights of Cooper."[2] Though there is evidence that Cooper Tire was aware that a separate settlement between Maza and Dr. Pillsbury was "imminent," Cooper Tire was not involved in the proceedings whereby both the probate court and the state trial court approved the separate settlement. On October 22, 1990, the state court dismissed Maza's complaint with prejudice.

After the settlement, Cooper Tire continued to pursue its claim in state court. Soon thereafter, however, it adopted a new strategy.[3] On May 8, 1991, Cooper Tire filed the present action in federal district court against Maza, Dr. Pillsbury, and St. Paul, seeking to recover its claim for medical expenses out of the $350,000 settlement received by Maza and the estate. Cooper Tire contends that Maza breached the terms of the Plan and the Receipt and Subrogation Agreements by settling around its subrogation claim. As to Dr. Pillsbury and St. Paul, Cooper Tire alleges that they tortiously interfered with the contractual relationship between Maza and Cooper Tire by settling Maza's claims.

After a bench trial, the district court determined that Maza breached his contractual obligations to Cooper Tire. Though the court recognized that Cooper Tire still had the right to pursue a claim against Dr. Pillsbury, it found that the separate settlement impaired Cooper Tire's rights. The court focused primarily on Maza's failure to obtain Cooper Tire's written consent prior to any settlement, as required, according to Cooper, by the Receipt and Subrogation Agreements.[4] In the district court's view, Maza thereby stripped Cooper Tire of its right to block a separate settlement. The court also noted that Maza's conduct deprived the Plan of "the considerable benefit of having the injured employee act as the party plaintiff in a trial against the tortfeasor." *Cooper Tire & Rubber Co. v. St. Paul Fire and Marine Ins. Co.,* No. 91–1156, mem. op. at 14 (W.D.Ark. Oct. 1, 1993).

As to Dr. Pillsbury and St. Paul, the court found that they had *intentionally* interfered with the Maza–Cooper Tire contract. Apply-

---

**2.** The "Addendum to Release and Settlement Agreement" executed by Maza provides in relevant part: "It is expressly understood that the subrogation and other rights of Cooper as provided by the Plan and the Receipt and Subrogation Agreement is[sic] reserved and this settlement and release is not intended by the parties to in any way effect such subrogation and other rights of Cooper." App. at 430. Similarly, the order of dismissal entered in the state court action provides: "The intervention of Cooper Tire and Rubber Company is reserved and this dismissal is not intended to in any way effect the claims alleged in the intervention." *Id.* at 594.

**3.** On Cooper Tire's motion, the Arkansas state court action was dismissed without prejudice on November 16, 1992.

**4.** The relevant portion of the Receipt and Subrogation Agreement provides:

Warranted no settlement has been made by the undersigned [Maza] with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said Cooper Tire & Rubber Company....

ing Arkansas law, the court found that: 1) a valid contract existed between Maza and Cooper Tire; 2) Dr. Pillsbury and St. Paul knew of the contract; 3) Dr. Pillsbury and St. Paul knew that a settlement with Maza would harm the rights of Cooper Tire; and 4) Cooper Tire suffered damage as a result.

Based on these findings, the court imposed joint and several liability on Maza, Dr. Pillsbury, and St. Paul for the amount of the medical expenses paid by Cooper Tire ($298,-118.07) plus prejudgment interest ($53,-661.25). The court denied Cooper Tire's request for attorneys' fees. Maza, Dr. Pillsbury, and St. Paul (collectively "Defendants") appeal from the judgment. Cooper Tire cross-appeals from the district court's denial of attorneys' fees.

## II. DISCUSSION

█ In this appeal from a civil bench trial, we review the trial court's findings of fact for clear error. Its conclusions of law are subject to de novo review. Mixed questions of law and fact that require the consideration of legal concepts and the exercise of judgment about the values underlying legal principles are also reviewed de novo. *See Ellis v. Great–West Life Assurance Co.*, 43 F.3d 382, 385–86 (8th Cir.1994).

Defendants contend on appeal that the district court erred in failing to apply federal common law estoppel principles. They argue that Cooper Tire is estopped from bringing this action as a result of its willing participation in separate settlement negotiations and its initial acquiescence in the Maza–Pillsbury settlement. We need not address this argument. Both the parties and the district court have underestimated the impact of ERISA on Cooper Tire's claims. Viewed in the context of the ERISA civil enforcement scheme, Cooper Tire's claims fail.

█ Our analysis focuses on Cooper Tire's claim against Maza. Cooper Tire styles the claim as an action for breach of the Plan and the Receipt and Subrogation Agreements. This claim must be based on a specific ERISA provision.[5] The broad preemptive sweep of ERISA limits Cooper Tire to the civil remedies contained in 29 U.S.C. § 1132(a). *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54–57, 107 S.Ct. 1549, 1556–58, 95 L.Ed.2d 39 (1987); *Kuhl v. Lincoln Nat'l Health Plan*, 999 F.2d 298, 302–04 (8th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). Otherwise, "the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined...." *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556.

█ Section 1132(a) of ERISA provides that certain civil actions may be brought by a "participant," "beneficiary," or "fiduciary." As the administrator of its own plan, Cooper Tire qualifies as a fiduciary, *see* 29 U.S.C. § 1002(21)(A), but not as a participant or beneficiary, *see id.* § 1002(7)–(8). The remedies available to a fiduciary are set forth in section 1132(a)(3), which provides that a civil action may be brought:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

In order to obtain relief[6] under this provision, Cooper Tire must establish that Maza has failed to comply with the terms of the statute or the Plan. As noted above, the district court imposed liability based on Maza's failure to comply with the terms of the Receipt and Subrogation Agreements.

*See* 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(g)(1)." App. at 133.

---

App. at 420.

**5.** Based on Cooper Tire's complaint and the district court's memorandum opinion, neither Cooper Tire nor the district court directly linked the claim to a specific ERISA provision. However, in a separate opinion denying Cooper Tire attorneys' fees, the district court noted that such fees are allowable "since this is a civil action brought by a fiduciary to enforce the terms of the plan.

**6.** Cooper Tire does not seek an injunction pursuant to section 1132(a)(3)(A). Under 1132(a)(3)(B), Cooper Tire is entitled only to "appropriate equitable relief." Based on our resolution of this case, we do not reach the issue of whether the relief awarded by the district court was "equitable relief."

Failure to comply with these agreements does not result in liability under section 1132(a)(3).

Section 1132(a)(3) requires a showing that the terms of the applicable ERISA *plan* have been violated. The Receipt and Subrogation Agreements are not part of Cooper Tire's Plan. They were executed after the covered medical expenses had been incurred and at a time when Maza already had a right to the benefits. *See Sturges v. Hy–Vee Employee Benefit Plan and Trust,* 991 F.2d 479, 481 (8th Cir.1993) (per curiam) (finding plan revisions made after the occurrence of a covered event to be inapplicable to the participant). Cooper Tire is bound by the terms of the Plan in effect at the time the Mazas incurred the covered medical expenses. After a covered event has occurred, a plan administrator cannot create new rights in a separate document and enforce those rights under ERISA.[7]

Thus, to determine the validity of Cooper Tire's claim against Maza, we must look to the terms of the Plan itself. The relevant language is contained in Article 12(e) of the Plan and can be broken down into three parts. First, it provides that Cooper Tire "will upon making payment [for a covered service or prescription drug] under this Plan succeed to any rights of recovery the Employee or dependent may have or acquire (with respect to such service or prescription drug) against any person or organization...." Second, an employee who accepts payments under the Plan is required "to furnish such information and assistance, and execute such assignment[s] and other instruments as [Cooper Tire] may reasonably request to facilitate enforcement of the successor rights of [Cooper Tire]." Finally, the employees and their dependents are directed to "take no action prejudicing" Cooper Tire's subrogation rights.[8]

The Plan gives Cooper Tire the power to "construe and interpret" the provisions of the Plan. Cooper Tire's interpretation of Article 12(e) is evident from its arguments in this appeal and from the Receipt and Subrogation Agreements. Essentially, Cooper Tire contends that the Plan language gives it: 1) subrogation rights as to *all* claims (not just medical expense claims) against any party liable for medical expenses; 2) the right to demand written consent prior to settlement of *any* claim against any party liable for medical expenses; and 3) the right to first-dollar recovery out of any settlement if written consent is not obtained.[9]

7. Indeed, the Receipt and Subrogation Agreements recognize this limitation. Each Agreement provides: "This Receipt and Subrogation Agreement is subject to the provisions of Article 12, Section E of Cooper Salaried Employees Medical Benefits...." App. at 420. Article 12(e) contains the Plan's subrogation provisions.

8. Article 12(e) of the Plan provides as follows:
   In the event an Employee or a dependent of an Employee, including the surviving spouse or a surviving dependent of a deceased Employee, is legally entitled to recover, including recovery under uninsured motorist coverage, all or a *portion of the cost of a service or prescription* drug covered by this Plan from a third party, the Company will upon making payment under this Plan succeed to any rights of recovery the Employee or dependent may have or acquire (with respect to such service or prescription drug) against any person or organization except insurors [sic] of individual hospital, surgical, or medical policies issued to the Employee or dependent.
   Employees (including dependents, surviving spouses or surviving dependents of deceased Employees) by acceptance of such benefit payments agree to furnish such information and

assistance, and execute such assignment and other instruments as the Company may reasonably request to facilitate enforcement of the successor rights of the Company. Employees and their dependents shall take no action prejudicing such rights of the Company.
App. at 498.

9. The portions of the Receipt and Subrogation Agreements that reflect this interpretation provide in relevant part:
   [T]he undersigned [Maza] hereby subrogates said Cooper Tire & Rubber Company, to all of the rights, claims and interest which the undersigned may have against any person or corporation liable for the loss mentioned above
   ....
   Warranted no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said Cooper Tire & Rubber Company....
App. at 420. Though we believe these provisions can be reasonably read to apply only to claims

■ We review an administrator's interpretation of the Plan language under an "abuse of discretion" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Kennedy v. Georgia–Pacific Corp.*, 31 F.3d 606, 609 (8th Cir.1994). In so doing, we examine: 1) whether the interpretation is consistent with the goals of the Plan; 2) whether it renders any language in the Plan meaningless or internally inconsistent; 3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether Cooper Tire has interpreted the provision at issue consistently; and 5) whether the interpretation is contrary to the clear language of the Plan. *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir.1992).

Based on the limited record before us, we are not prepared to find that Cooper Tire's interpretation of the Plan is inconsistent with the Plan's goals. Likewise, Cooper Tire's interpretation does not render any of the Plan language itself internally inconsistent. Nonetheless, the remaining factors persuade us that Cooper Tire has abused its discretion by so broadly interpreting the scope of Article 12(e).

First, the Plan conflicts with the ERISA requirement that the summary plan description (SPD) be "sufficiently accurate and comprehensive to reasonably apprise [the] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Cooper Tire's SPD fails to inform participants that Cooper Tire will claim a right to written consent or first-dollar recovery on *all* the participant's claims against a liable third party. Thus, it does not support Cooper Tire's interpretation. *See Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters and Eng'rs Health and Welfare Plan*, 25 F.3d 616, 621 (8th Cir.1994).

In addition, there is evidence that Cooper Tire has interpreted the subrogation provision inconsistently. In a 1980 letter to Maza

explaining the subrogation provisions in the Plan, Cooper Tire wrote:

> The Subrogation Section permits Cooper to be reimbursed from any liable third party for medical expenses incurred, as the result of an accident, by an employee or eligible spouse or dependent. A liable third party may be the party at fault, his/her Insurance Company or, when appropriate, your Uninsured Motorist Coverage. Under this paragraph you will be asked to sign an Agreement that allows Cooper to collect from the liable third party, then Cooper's Medical Plan will pay all medical costs that are covered by the plan.

App. at 422. This letter does not state, or even imply, that the subrogation provisions give Cooper Tire rights in claims other than those for medical expenses.

Most importantly, we find Cooper Tire's interpretation to be contrary to the plain language of the Plan. Cooper Tire's subrogation rights are expressly limited to Maza's right to recovery of medical expenses. Per the language of the Plan, Cooper Tire "succeeds" only to rights of recovery an employee or dependent may have *"with respect to"* services or drugs covered by the Plan. Thus, Cooper Tire's subrogation rights do not extend beyond its claim for medical expenses. Given this limitation, Cooper Tire may not demand written consent prior to settlement of non-medical expense claims and characterize it as a means to "facilitate enforcement" of its subrogation rights.

■ In sum, we find Cooper Tire's interpretation of the Plan's subrogation provisions to be an abuse of discretion. Reasonably interpreted, the Plan gives Cooper Tire subrogation rights only with respect to the medical expenses it paid on Maza's behalf. This being the case, there is no evidence that Maza took any actions which impaired Cooper Tire's subrogation rights. Cooper Tire still has the right to pursue its claim for medical expenses against Dr. Pillsbury. This right was expressly reserved by the Maza–Pillsbury settlement agreement and by the dismissal order of the Arkansas state court.

involving medical expenses, Cooper Tire's arguments on appeal make clear that it interprets this

language broadly to apply to all claims against a party liable for medical expenses.

In addition, Cooper Tire still has the right to pursue its claim in Maza's name.[10]

Thus, there is no evidence that Maza's conduct violated the terms of the Plan and he cannot be held liable under section 1132(a)(3). In the absence of any violation of Cooper Tire's rights, the state law tortious interference claim against Dr. Pillsbury and St. Paul fails and we need not consider whether it is preempted by ERISA. Cooper Tire's motion to assess attorneys' fees is moot and the district court's denial of the motion must be affirmed.

## III. CONCLUSION

For the foregoing reasons, the order of the district court is reversed and this action is remanded with directions to dismiss Cooper Tire's claims against St. Paul Fire and Marine Insurance Company, Richard C. Pillsbury, M.D., and Robert Maza. The district court's denial of Cooper Tire's motion for attorneys' fees is affirmed.

### *Appendix*

### *RECEIPT AND SUBROGATION AGREEMENT*

The undersigned hereby acknowledges RECEIPT from the Cooper Tire & Rubber Company of the sum of One thousand six hundred and 00/100 Dollars ($1600.00) in full settlement of all claims and demands of the undersigned and any spouse or dependents of the undersigned for any medical costs, expenses or any other items whatsoever payable under the Cooper Tire Medical Payment Plan with regard to any accident, illness, or injury commencing on or about the 23rd day of June, 1988, or any medical treatment or services rendered during the period commencing on or about the 3rd day of October, 1988, and ending on or about the 30th day of November, 1988.

In consideration of and to the extent of said payment the undersigned hereby subrogates said Cooper Tire & Rubber Company, to all of the rights, claims and interest which the under-signed may have against any per-

son or corporation liable for the loss mentioned above, and authorizes the said Cooper Tire & Rubber Company to sue, compromise or settle in the under-signed's name or otherwise all such claims and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned, with the same force and effect as if the undersigned executed or endorsed them.

Warranted no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of said Cooper Tire & Rubber Company and the undersigned covenants and agrees to cooperate fully (and to exert his best efforts to cause any affected spouse or dependent to cooperate fully) with said Cooper Tire & Rubber Company in the prosecution of such claims, and to procure and furnish all papers and documents necessary in such proceedings and to attend court and testify (and to exert his best efforts to cause any affected spouse or dependent to attend court and testify) if Cooper Tire & Rubber Company deems such to be necessary but it is understood the undersigned is to be saved harmless from costs in such proceedings.

This RECEIPT AND SUBROGATION AGREEMENT is subject to the provisions of Article 12, Section E of Cooper Salaried Employees Medical Benefits, effective 1/1/86.

---

10. Article 12(e) of the Plan requires Maza to furnish assistance which Cooper Tire may "reasonably request to facilitate enforcement" of its rights. It is reasonable to interpret this language to allow Cooper Tire to sue in Maza's name to recover the medical expenses it has paid.