_____

Nos. 95-3128/3176

_____

Greater Kansas City Laborers          *
Pension Fund, a Trust Fund;           *
Greater Kansas City Laborers          *
Welfare Fund, a Trust Fund;           *
Greater Kansas City Laborers          *
Vacation Plan, a Trust Fund;          *
Greater Kansas City Laborers          *
Training Fund, a Trust Fund,          *
                                      *
        Appellants/Cross-appellees,*
                                      *
John Rider; Jeffrey Chaikin,          *
parties immediately above acting*
as Trustees of the Greater            *
Kansas City Laborers Pension          *
Fund, Greater Kansas City             * Appeal and Cross-Appeal from the
Laborers Welfare Fund, Greater        * United States District Court for
Kansas City Laborers Vacation         * the Western District of Missouri
Plan and Greater Kansas City          *
Laborers Training Fund;               *
Charles Jones; Charles Mackey,        *
                                      *
            Appellants,               *
                                      *
        v.                            *
                                      *
Superior General Contractors,         *
Inc.; Bohnert Construction            *
Company,                              *
                                      *
        Appellees/Cross-appellants.*

_____

Submitted:  March 11, 1996

Filed:  January 15, 1997

_____

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Four employee trust funds -- the Greater Kansas City Laborers Pension Fund, the Greater Kansas City Laborers Welfare Fund, the Greater Kansas City Laborers Vacation Fund, and the Greater Kansas City Laborers Training Fund (collectively plaintiffs or the Funds) -- appeal from a final order entered in the United States District Court[1] for the Western District of Missouri holding that defendants Bohnert Construction Company, Inc. (New Bohnert), and Superior General Contractors, Inc. (Superior General),[2] were not liable to the Funds under §§ 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(g), 1145, for employee fringe benefit contributions allegedly due between July 1, 1992 and March 31, 1994.  Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., No. 94-0374-CV-W-1 (W.D. Mo. July 21, 1995) (Findings of Fact & Conclusions of Law).  For reversal, the Funds argue the district court erred in (1) holding that New Bohnert was not the alter ego of Superior General, (2) failing to consider certain documentary evidence submitted by the Funds, and (3) admitting into evidence an NLRB charge and decision addressing whether alter ego status should apply to defendants. In addition, defendants argue on cross-appeal that the district court erred in holding that it had jurisdiction over the present action under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145.  For the reasons discussed below, we affirm the order of the district court.

## I.  Background

The Funds are employee trust funds established between 1962 and 1974 pursuant to the collective bargaining agreement entered into between the Builders Association of Missouri and various

---

[1]The Honorable Dean Whipple, District Judge, United States District Court for the Western District of Missouri.

[2]New Bohnert and Superior General are collectively referred to as "defendants."

-2-

affiliates of the Laborers International Union of North America in Kansas City, Missouri.[3]  The Funds were established under § 302 of the Labor Management Relations Act, 29 U.S.C. § 186.  In addition, they are employee benefit plans governed by § 3 of ERISA, 29 U.S.C. § 1002.

New Bohnert is a Missouri corporation in the business of construction in Missouri and Kansas.  It was incorporated in 1991, when the construction company originally founded in 1979 by Al Bohnert, Bohnert Construction Co. (Old Bohnert), changed its name to Bohnert CC, Inc., and transferred its general contracting work to New Bohnert.[4]

In 1981 and 1982, Charlie Morgan, Terry Tackett, and Stan Minor joined Old Bohnert.  At that time, Old Bohnert provided several types of services:  general contracting, foundation work, interior work, and refrigeration.  According to defendants' theory of the case, Al Bohnert decided several years later to assist Morgan, Tackett, and Minor in starting their own company.  Thus, in 1988, Al Bohnert helped them establish Superior General.  Superior General was incorporated in late 1988.  Although Al Bohnert was the majority shareholder in Superior General, Morgan served as president of the company, made all decisions concerning the daily operations, and directed Superior General's labor relations.  In 1989, Tackett became a vice-president of Superior General. At approximately the same time, Minor decided to sell his interest in Superior General to Morgan and Tackett.  Thereafter, Morgan and Tackett operated Superior General.

---

[3]The collective bargaining agreement establishing the Funds was amended and revised effective January 1, 1976.

[4]Bohnert Construction Co., Inc., incorporated in 1991, does not use the name "New Bohnert," nor did the original company refer to itself as "Old Bohnert."  We use these terms for purposes of clarification, however, because the relationship between New Bohnert and Superior General is at issue in the present case.

On January 1, 1989, Superior General signed a contract stipulation to be bound by the collective bargaining agreement between the Builders Association and the Union. This collective bargaining agreement contained an "evergreen clause," meaning that the terms of agreement would be automatically renewed unless either party provided written notice of termination to the other within a specified time period. Between 1988 and November 1992, when it ceased operations, Superior General employed laborers performing work covered by the collective bargaining agreement. This agreement provided that Superior General would make fringe benefit contributions to the Funds for the laborers it employed.

In March 1991, Al Bohnert incorporated another construction business, New Bohnert. At the same time, the original company (Old Bohnert) changed its name to Bohnert CC, Inc., and transferred all of its general contracting business to New Bohnert. Defendants maintain that New Bohnert was created because Al Bohnert wanted Kelsey Goss, one of his employees, to acquire an ownership interest in the general contracting business. Goss became a shareholder of New Bohnert at its inception. After New Bohnert was created, Old Bohnert performed only interior finishing work and accounting services.

Throughout its existence, Superior General had operated from its own premises, which were initially leased from Old Bohnert. As business grew, Superior General leased additional property from other companies. In addition, Superior General also used the accounting department of Old Bohnert for its routine accounting functions. Between 1988 and 1991, Superior General made a single monthly payment for these accounting services. In 1992, however, Superior General and New Bohnert began a "proportionate assessment" system in which Stan Minor had the discretion to distribute the cost of the accounting services between New Bohnert and Superior General based upon his assessment of the use each company had made

of Old Bohnert's accounting department during a particular time period.

Superior General did a substantial amount of business with Old Bohnert, and later, New Bohnert, through a competitive bid process. These arrangements were negotiated between Charlie Morgan and Terry Tackett on behalf of Superior General and the project managers for Old Bohnert and New Bohnert. Superior General also performed subcontracting work for other entities.

In 1992, Superior General began to lose money and, by mid-1992, had experienced severe financial losses. In August 1992, Charlie Morgan resigned from Superior General. Terry Tackett remained at Superior General to wind up its outstanding projects. Superior General ceased operations on November 30, 1992, and therefore employed no laborers after that date.

The present litigation arose when the Funds' trustees instituted suit in federal district court against Superior General and New Bohnert, under §§ 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, seeking fringe benefit contributions due under two collective bargaining agreements to which Superior General was a signatory employer. The first collective bargaining agreement ran from June 1, 1990, to March 21, 1993; the second ran from April 26, 1993, through March 31, 1996. The Funds alleged that New Bohnert was an alter ego of Superior General, and that New Bohnert and Superior General should be held jointly and severally liable to the Funds for any contributions due. Following a bench trial, the district court determined that (1) Superior General had made all the contributions it was legally obligated to make before it ceased operations[5] and (2) New Bohnert was neither a signatory to the

---

[5]Specifically, the district court found that Superior General had "made all required fringe benefit contributions to the Plaintiff Funds between January 1, 1989, through its cessation of operations on November 30, 1992." Slip op. at 7.

-5-

collective bargaining agreements nor an alter ego of Superior General. Slip op. at 7, 9.

The district court relied on the factors presented in <u>Iowa Express Distribution, Inc. v. NLRB</u>, 739 F.2d 1305, 1310 (8th Cir. 1984) (<u>Iowa Express</u>), <u>cert. denied</u>, 469 U.S. 1088 (1984), and <u>Crest Tankers, Inc. v. National Maritime Union</u>, 796 F.2d 234, 237 (8th Cir. 1986) (<u>Crest Tankers</u>), to determine whether a successor employer which has not signed a labor contract is nevertheless bound by its terms as an "alter ego" of a signatory employer. The district court found that Superior General and New Bohnert were not alter egos because the two companies did not share substantially identical ownership, management, supervision, business purposes, operation, customers, or equipment. Slip op. at 9. The district court specifically found that (1) control and management of Superior General and New Bohnert were distinct and separate, because, although Al Bohnert was the majority shareholder in Superior General, he played no role in its operations; (2) the arrangement by which Superior General utilized the accounting department of Old Bohnert was negotiated in an arm's length transaction; (3) separate books were kept for Superior General and New Bohnert which clearly showed their separate operations and employees; and (4) although Superior General and New Bohnert did a substantial volume of business with one another, such arrangements were negotiated in arm's length transactions, through a competitive bidding process. <u>Id.</u> at 4-6. Finally, noting that "[g]enerally, an alter ego finding requires the existence of an unlawful motive or intent to avoid the terms of the collective bargaining agreement," the district court found that the closing of Superior General and the creation of New Bohnert was not accompanied by anti-union animus. <u>Id.</u> at 9 (quoting <u>Iowa Express</u>, 739 F.2d at 1310-11), 7.

The Funds then filed this timely appeal. In addition, Superior General and New Bohnert filed cross-appeals, arguing that

the district court lacked jurisdiction under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, to hear the present case because it falls within the exclusive jurisdiction of the National Labor Relations Board.

## II.  Discussion

### A.    Alter Ego Analysis

For reversal, the Funds first argue the district court applied an incorrect legal standard in concluding that New Bohnert was not the alter ego of Superior General and was therefore not liable for any contributions to the Funds.  Specifically, the Funds contend that the district court placed undue weight on its finding that anti-union animus did not motivate the closing of Superior General and the creation of New Bohnert.  The Funds argue that "the mere existence of 'some legitimate business reason' for a change in corporate organization should not alone prevent a finding of alter ego status."  Crest Tankers, 796 F.2d at 238 n.2 (quoting NLRB v. Allcoast Transfer, Inc., 780 F.2d 576, 581 (6th Cir. 1986)).  The Funds contend that the district court's finding of no anti-union animus does not preclude a determination that Superior General and New Bohnert operated as alter egos.

Defendants argue that the district court's alter ego analysis did not place undue weight on the absence of unlawful motivation.  Defendants argue that the district court made specific factual findings rejecting every element of the alter ego analysis.  They further maintain that these factual findings are not clearly erroneous and should therefore be upheld on appeal.

Determination of alter ego status involves a mixed question of law and fact.  We therefore review the district court's findings of fact for clear error and its conclusions of law de novo.  See, e.g., Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Insurance

Co., 48 F.3d 365, 369 (8th Cir.), cert. denied, 116 S. Ct. 300 (1995).

The parties and the district court may have mistaken the applicable law. The factors set forth in Iowa Express and Crest Tankers for determining alter ego status under labor law do not control the question of Superior General's and New Bohnert's corporate relationship, if any, because the present action arises under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145. We have previously applied corporate law principles to determine employer liability under ERISA, where such principles comport with the language and purposes of the statute. See Pipe Fitters Health & Welfare Trust v. Waldo, R., Inc., 969 F.2d 718, 720-21 (8th Cir. 1992), cert. denied, 506 U.S. 1054 (1993); Rockney v. Blohorn, 877 F.2d 637, 642-43 (8th Cir. 1989).[6] The alter ego doctrine as developed under the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., involves a more lenient standard for disregarding the corporate form than that employed in corporate law. The focus of the labor law alter ego doctrine "is on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." Iowa Express, 739 F.2d at 1310-11 (quoting Penntech Papers, Inc. v. NLRB, 706 F.2d 18, 24 (1st Cir.), cert. denied, 464 U.S. 892 (1983)). By contrast, the alter ego doctrine as developed under corporate law provides that the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat

---

[6]We note, however, that a plaintiff may not attempt to pierce the corporate veil to enforce an ERISA judgment against an individual not liable for the underlying ERISA violation. Peacock v. Thomas, 116 S. Ct. 862, 865-66 (1996). The Supreme Court has held that such an action constitutes an improper attempt to use ancillary jurisdiction "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." Id.

-8-

public convenience, to justify wrong, or to perpetuate a fraud. See In re B.J. McAdams, Inc., 66 F.3d 931, 937 (8th Cir. 1995) (McAdams), cert. denied, 116 S. Ct. 2546 (1996); Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc., 519 F.2d 634, 638 (8th Cir. 1975) (Lakota). Thus, control by one company over its alleged alter ego is necessary under the corporate law standard. See McAdams, 66 F.3d at 937; see also Pepper v. Litton, 308 U.S. 295, 306-07 (1939) ("The essence of the [corporate law alter ego] test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.") (footnote omitted).

Although the underlying congressional policy behind ERISA favors the disregard of the corporate entity in situations where employees are denied their pension benefits, such policy interests are not implicated in the present case, which does not involve an individual pensioner's claim for benefits; rather, it involves a pension fund's attempt to collect unpaid contributions. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 85 F.3d 1282, 1288 (7th Cir. 1996). Moreover, even if such interests were at stake in the present case, we believe the corporate law standard for determining alter ego status strikes an appropriate balance between the congressional intent of ERISA and the long-established principle that a corporation's existence is presumed to be separate and may be disregarded only under narrowly prescribed circumstances. See Lakota, 519 F.2d at 638.

Applying the corporate law standard of alter ego status to the facts of the present case, we hold that New Bohnert was not an alter ego of Superior General. Our review of the record indicates that the factual findings of the district court were not clearly erroneous. As noted above, the district court found that control and management of Superior General and New Bohnert were distinct and separate and that transactions between the two companies were

negotiated at arm's length.  See slip op. at 4-6. When examined de novo under the two-part corporate law test set forth in McAdams for determining alter ego status, these facts lead us to conclude that New Bohnert was neither controlled by Superior General "to the extent that it has independent existence in form only" nor "used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud."  See McAdams, 66 F.3d at 937.  We therefore hold that New Bohnert is not liable as an alter ego of Superior General for fringe benefit contributions to the Funds.[7]

B.    Documentary Evidence

The Funds next argue that the district court erred in failing to consider certain documentary evidence submitted by the Funds in support of their contention that New Bohnert is an alter ego of Superior General. They argue that the district court placed exclusive weight on testimony by Al Bohnert and Charles Morgan that the two companies were operated separately and erroneously failed to consider contradictory documentary evidence.  Yet the Funds do

---

[7]As an alternative basis for holding New Bohnert liable for unpaid fringe benefit contributions, the Funds argue that Superior General and New Bohnert constituted a single employer.  In Iowa Express Distrib., Inc. v. NLRB, 739 F.2d 1305, 1310 (8th Cir.), cert. denied, 469 U.S. 1088 (1984), we explained that "[t]he single employer doctrine is a [National Labor Relations] Board creation that treats two or more related enterprises as a single employer for purposes of holding the enterprises jointly to a single bargaining obligation or for the purpose of considering liability for any unfair labor practices."  Factors to be considered in determining whether two distinct business entities are to be deemed a single employer for purposes of the National Labor Relations Act include: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control.  Id.; see also Crest Tankers, Inc. v. National Maritime Union, 796 F.2d 234, 237 (8th Cir. 1986) (describing factors relevant to single employer analysis).  The single employer doctrine is not relevant to the present case, however, because we hold that corporate law principles govern the assessment of the corporate relationship, if any, between New Bohnert and Superior General.

not specify in their briefs which documents were allegedly disregarded by the district court. Rather, they argue that had the district court considered the documentary evidence, it would have found that the requisite common control and ownership existed between New Bohnert and Superior General.

Defendants respond, and we agree, that the Funds are essentially challenging the factual findings of the district court, which may not be set aside unless clearly erroneous. A factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. In re Sherman, 67 F.3d 1348, 1353 (8th Cir. 1995). We cannot say that the district court's findings of fact are clearly erroneous. The district court was not required to "make specific findings with respect to all of the evidence presented, nor even refer to all the evidence introduced." Griffin v. City of Omaha, 785 F.2d 620, 628 (8th Cir. 1986). We note, however, that the district court did refer to several pieces of documentary evidence in its memorandum opinion, including a sublease, an accounting agreement, and the corporate books of Superior General and New Bohnert. Slip op. at 4-8. The district court's reliance on the credibility of witness testimony in reaching its conclusions does not constitute a basis for setting aside its factual findings. See Stevens v. McHan, 3 F.3d 1204, 1206 (8th Cir. 1993) (findings supported by the record but based primarily on a trial judge's decision on the credibility of the witnesses can "`virtually never be clear error'") (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985)); see also In re Central Arkansas Broadcasting Co., 68 F.3d 213, 215 (8th Cir. 1995) (per curiam) ("Where there is more than one permissible view of the evidence, we may not hold that the choice made by the trier of fact was clearly erroneous.").

## C. Admissibility of NLRB Charge and Decision

Finally, the Funds argue that the district court abused its discretion in admitting into evidence a 1993 unfair labor practice charge filed against defendants and a decision by the Board not to prosecute this charge. In the unfair labor practice charge, the local unions which had executed the collective bargaining agreement with Superior General alleged that Superior General had repudiated the collective bargaining agreement in violation of § 8(b)(1), (3), and (5) of the NLRA, 29 U.S.C. § 158(b)(1), (3), and (5). App. at 45-46. As in the present case, the liability of New Bohnert was premised upon an alter ego theory. The Board decided not to prosecute the charge after determining that New Bohnert was not an alter ego of Superior General. Id. at 46. Noting that the district court had previously ruled that the Board decision could not collaterally estop a finding of alter ego liability in the present action, the Funds argue that the unfair labor practice charge and Board decision were irrelevant to the alter ego issue and therefore inadmissible at trial.

In light of our above holding that the labor law standard for determining alter ego status does not control the present case, we agree that the unfair labor practice charge and the Board decision were irrelevant to the question whether New Bohnert was liable to the Funds under ERISA as an alter ego of Superior General. However, in bench trials, the admission of incompetent or irrelevant evidence is not a ground for reversal "when there is sufficient competent evidence to support the judgment and it does not appear that the court was induced by . . . [that] evidence to make essential findings that it otherwise would not have made." O'Connor v. Peru State College, 781 F.2d 632, 639 (8th Cir. 1986); see also Harris v. Rivera, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). In the present case, the factual findings of the district court are supported by

-12-

sufficient evidence in the record.  Nor was the district court induced by the evidence to make essential findings that it otherwise would not have made.  Thus, admission of this irrelevant evidence was harmless error.

### D.    Cross-Appeal

New Bohnert and Superior General argue on cross-appeal that the district court erred in determining that it had jurisdiction under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, over the present action.    Citing Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 484 U.S. 539, 545-53 (1988) (Advanced Lightweight), defendants contend that the remedy provided in §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, does not confer jurisdiction on federal district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions violates the NLRA, 29 U.S.C. § 151 et seq.  In Advanced Lightweight, the defendant company was a party to two multi-employer collective bargaining agreements that required monthly contributions to eight employee benefit plans.    The company made the requisite contributions until the expiration date of the multi-employer agreements but made no contributions thereafter.  484 U.S. at 541-42.  The plans' trustees sued the company in federal district court, alleging that the company's unilateral decision to discontinue making its contributions constituted a breach of its duty to bargain in good faith in violation of § 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5).  484 U.S. at 541-42.  The complaints alleged that the federal court had jurisdiction under § 515 of ERISA, 29 U.S.C. § 1145.  The Supreme Court, affirming the judgment of the court of appeals, held in favor of the company on the ground that an employer's liability under § 515 of ERISA, 29 U.S.C. § 1145, was limited to the effective period of the collective bargaining agreement and that the section does not confer federal jurisdiction to determine whether an employer's refusal to make postcontract contributions violates the NLRA.  484

U.S. at 549.  The Court reasoned that the text and legislative history of §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, described the employer's contractual obligation to make contributions but omitted any reference to the noncontractual obligation imposed by the NLRA.  484 U.S. at 545-49.

Defendants argue that Advanced Lightweight controls the present case and that the district court therefore lacked jurisdiction under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, to entertain the action brought by the Funds, because it fell within the exclusive jurisdiction of the NLRB.  Defendants maintain that the present case, like Advanced Lightweight, involves conduct alleged to constitute a violation of the NLRA, because the Funds claimed that New Bohnert was liable under the labor law standard for alter ego status for unpaid contributions and New Bohnert raised the defense of repudiation of the collective bargaining agreement.[8]

We hold that the district court had jurisdiction under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, over the present case. Defendants' reliance on Advanced Lightweight is misplaced, because the Funds, unlike the plaintiff trustees in Advanced Lightweight, did not claim that defendants' failure to make fringe benefit contributions constituted an unfair labor practice.  Moreover, defendants' jurisdictional argument also fails in light of our above holding that the labor law standard for alter ego status does not govern the alter ego liability of a defendant corporation in a suit brought under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145, seeking fringe benefit contributions.

_____

[8]The district court did not consider New Bohnert's repudiation defense in determining that New Bohnert and Superior General were not liable for fringe benefit contributions.  See slip op. at 8-10.

-14-

Nor does the present case fall within the jurisdiction of the NLRB because New Bohnert raised the defense of repudiation of the collective bargaining agreement.  Defendants' argument is foreclosed by the well-established principle that an action does not arise under federal law through the assertion of a defense. See <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 9-12 (1983).

### III.  Conclusion

We hold that the district court did not err in holding that New Bohnert was not liable as an alter ego of Superior General for  fringe benefit contributions allegedly owed to the Funds under ERISA.  We further hold that the district court had jurisdiction over the present action under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145.  Accordingly, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.