# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 04-6016SI

_____

| | | |
|---|---|---|
| In re: Donnie R. Cox and | * | |
| Michelle M. Cox, | * | |
| | * | |
| Debtors | * | |
| | * | |
| Donnie R. Cox and | * | |
| Michelle M. Cox | * | |
| | * | |
| Debtors - Appellants | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Southern District of Iowa |
| | * | |
| Habbo G. Fokkena | * | |
| | * | |
| U.S. Trustee - Appellee | * | |

_____

Submitted: August 26, 2004
Filed: October 19, 2004

_____

Before MAHONEY, VENTERS, and McDONALD, Bankruptcy Judges.

McDONALD[1], Bankruptcy Judge

---

[1] The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri, sitting by designation.

Debtors Donnie R. Cox and Michelle M. Cox (collectively "Debtors") appeal from the judgment of the bankruptcy court[2] granting the motion of the United States Trustee (the "UST") to dismiss Debtors' case under 11 U.S.C. § 707(b).  We affirm.

I.

Debtors liquidated their two Employee Stock Option Plans (collectively the "ESOP") in 1998, resulting in net proceeds of  $419,000 to Debtors.  Debtors used approximately $ 210,000 from the liquidation of the ESOP to purchase a lot and remit a down payment on the construction cost of a new residence (the "Residence").  Debtors also retained $50,000 to pay their anticipated federal tax liability resulting from the ESOP liquidation.

Debtors moved into the Residence with their two minor children in January 2000.  They incurred additional unanticipated costs in completing the construction of the Residence either just prior to or just after moving into the Residence.  Also, in February 2000, Debtors learned that their federal tax liability resulting from the ESOP liquidation was $150,000, not $50,000 as the had originally anticipated.  Debtors attempted to obtain enough cash to pay both the unanticipated construction costs and federal taxes by obtaining a loan secured by the Residence.  Debtors, however, after paying the additional construction costs on the Residence, were only able to pay $20,000 of the $150,000 of the their outstanding federal tax liability from the loan proceeds.  Accordingly, Debtors still had a significant tax liability resulting from the ESOP liquidation as of the petition date.

Debtors initially paid $1,083 per month to the IRS for their federal tax liability resulting from the ESOP liquidation.  They apparently entered into an agreement with

---

[2]  The Honorable Lee M. Jackwig, United States Bankruptcy Judge for the Southern District of Iowa.

the IRS whereby Debtors' employer sent the $1,083 per month directly to the IRS from Debtors' paychecks. The IRS, sometime in mid-2003, demanded that Debtors increase their payment to $2,880 per month. Because Debtors could not service the $2,880 monthly payment to the IRS, they filed their petition for relief under Chapter 7 of the United States Bankruptcy Code on August 8, 2003.

As of the petition date, Debtors listed two outstanding debts secured by the Residence. The first debt was valued at $ 297,000 and the second debt was valued at $32,000. Debtors listed the fair market value of the Residence at approximately $300,000. Thus, the record indicates that Debtors have no equity in the Residence. Also, Debtors' monthly payment on the first mortgage is $2,930 per month and $482 per month on the second mortgage.

The Debtors listed their combined net monthly income at approximately $6,000. This amount excluded the $1,083 that Debtors had been remitting to the IRS prior to the petition date. Debtors, however, ceased remitting the $1,083 per month to the IRS as of the petition date because they believed that their federal tax liability resulting from the ESOP liquidation would be discharged under § 524(a). Therefore, their combined net income as of the petition date was approximately $7,100 per month.

The UST filed a motion to dismiss Debtors' petition under 11 U.S.C. § 707(b). The basis of the UST's motion was its argument that because Debtors had sufficient disposable income to fund a Chapter 13 plan, granting relief to them under Chapter 7 would constitute a substantial abuse under § 707(b).

Debtors countered by arguing that their purchase of the Residence was as an investment. Therefore, Debtors maintained, the $320,000 debt that was secured by the Residence was utilized for investment purposes and was not a consumer debt.

Accordingly, Debtors maintain that their debts were not primarily consumer debts as required by § 707(b).

Debtors testified at the hearing on the UST's motion that the reason they liquidated the ESOP and invested the proceeds into the Residence was that they believed that the Residence was a better investment than the ESOP. Ms. Cox specifically testified that Debtors intended to use the anticipated future equity in the Residence to finance at least a portion of their financial needs during retirement. Debtors, however, also conceded that they have resided in the Residence with their two minor children since it was completed in January 2000 and they intend to reside in the Residence for the foreseeable future.

The UST produced the testimony of Todd Vandenberg, bankruptcy analyst for the UST's office for the Southern District of Iowa, in support of its motion. Vandenberg testified that the maximum reasonable housing expense was $1,175 per month. Vandenberg relied on the 2001 Consumer Expenditure Survey produced by the United States Bureau of Labor and Statistics (the "Survey") in reaching this conclusion. Vandenberg opined that if Debtors reduced their housing expense to $1,175 per month and included the $1,083 that they had ceased remitting to the IRS in their net income, Debtors would have sufficient disposable income to fund a Chapter 13 plan.

The bankruptcy court granted the UST's motion to dismiss Debtors' petition. The bankruptcy court first rejected Debtors' contention that the debt secured by the Residence were not consumer debts because the evidence demonstrated that Debtors utilized the Residence as their home. The bankruptcy court also found that Debtors' current housing expense for both mortgages totaling approximately $3,400 per month was "not reasonable under the circumstances." The bankruptcy court further noted that Debtors' monthly net income should be increased to $7,000 after deleting the $1,083 payment to the IRS. The bankruptcy court held that given the fact that

Debtors' monthly housing expense was not reasonable and their combined net income was approximately $7,000 per month, Debtors had sufficient disposable income to fund a Chapter 13 plan.

Debtors present three arguments on appeal. First, Debtors contend that the bankruptcy court erred in concluding that the debt secured by the Residence is a consumer debt as required by § 707(b). Debtor additionally maintain that the bankruptcy court's dismissal of their petition effectively denies the protection afforded them by Iowa's homestead exemption. Debtors' final point on appeal is that the bankruptcy court erred in admitting Vandenberg's testimony with respect to Vandenberg's opinion that $1,175 per month was the maximum reasonable housing expense. We will affirm for the following reasons.

## II.

The bankruptcy court's factual finding that the debt secured by the Residence is a consumer debts is a finding of fact that we will not reverse unless it is clearly erroneous. Fed. R. Bankr. P. 8013; Nelson v. Siuoxland Fed. Credit Union (In re Nelson), 223 B.R. 349, 352 (B.A.P. 8th Cir. 1998). Also, we will review the bankruptcy court's admission of Vandenberg's expert testimony with respect to the reasonableness of Debtors' housing expense for an abuse of discretion. Archer Daniels Midland Co. v. Aon Risk Serv., Inc., 356 F.3d 850, 859 (8th Cir. 2003). Finally, the determination of whether the bankruptcy court's dismissal of Debtors' petition had the effect of depriving Debtors of the benefit of Iowa's homestead exemption is a question of law that we will review on a de novo basis. See Long v. Educ. Credit Management Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2002).

## III.

*A. The bankruptcy court's finding that the debts secured by the Residence are consumer debts is not clearly erroneous.*

Debtors first contend that the bankruptcy court erred in determining that the debts secured by the Residence were consumer debts as required for dismissal under § 707(b). Debtors argue that because they testified that they bought their home for investment reasons and hoped to sell it for a profit in the future, the expenditure was an investment, not a consumer debt. We disagree.

The Bankruptcy Code defines a consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Consumer debt can be both secured and unsecured debt. Zolg v. Kelly (In re Kelly), 841 F.2d 908, 912 (9th Cir. 1988). With respect to debt secured by real property, if the debtor's purpose in incurring the debt is to purchase a home or make improvements to it, the debt is clearly for family or household purposes and fits squarely within the definition of a consumer debt under § 101(8). Id. at 913; Parker v. Fed. Home Loan Mortgage Co., 179 B.R. 492-494-95 (E.D. La. 1995); In re Nolan, 140 B.R. 797, 800-01 (Bankr. D. Colo. 1992).

Here, Debtors testified that they built the Residence with the intent of it being their residence, they have resided in the Residence since its completion and they have no plans to sell the Residence in the foreseeable future. Also, it appears from the record that Debtors used all but $20,000 of the proceeds from the debt secured by the Residence to complete the construction of and furnish the family's home. Thus, although Debtors certainly subjectively hoped that the Residence would appreciate in value, the objective evidence in the record amply supports the bankruptcy court's finding that Debtors incurred the debts primarily for family or household purposes under § 101(8).

Debtors also argue that because the ESOP liquidation was the source of the funds they used to purchase the lot and finance a portion of the construction of the Residence, the debt secured by the Residence is an investment.   A court, however, must examine the debtor's purpose in incurring the debt in question to determine whether it is a consumer debt under § 101(8).  Kelly, 841 F.2d at 913.  As just illustrated, Debtors' primary purpose here in incurring  the vast majority of the debt secured by the Residence was to fund the construction of the Residence.  Thus, regardless of the source of the funds used to finance the construction of the Residence, the Debtors' primary purpose in incurring the debt in question was clearly for family and household purpose under § 101(8).

The evidence in the record  reveals that Debtors' primary purpose in incurring the debt secured by the Residence was to furnish and complete the construction of the Debtors' home for family and personal use. Accordingly, we cannot hold that the bankruptcy court clearly erred in finding that the Debtors' debts are primarily consumer debts under § 101(8).

*B.  The bankruptcy court's dismissal of Debtors' petition does not deprive them of their rights under Iowa's homestead exemption.*

Debtors also argue on appeal that the bankruptcy court's dismissal of their Chapter 7 case has the effect of depriving them of their homestead exemption under Iowa law.  We disagree.

As an initial matter, Iowa's homestead exemption only affords a homeowner protection to the extent that the homeowner has equity in the homestead.  Specifically, the homestead exemption protects the homeowner's interest in the homestead from execution by unsecured creditors only to the extent that the value of the homestead is greater than the value of the outstanding consensual liens on the homestead.  Iowa Code § 561.121; Cox v. Harris, 433 N.W.2d 716, 718 (Iowa 1988).  The undisputed evidence adduced below indicates that the value of the outstanding

consensual liens on the Residence exceeds the fair market value of the Residence. Therefore, Iowa's homestead exemption would not afford Debtors protection even within a Chapter 7 proceeding.

Further, even if the Iowa homestead exemption could somehow protect Debtors' non-existent equity, the bankruptcy court's dismissal of their petition under § 707(b) does not deprive them of the benefit of the exemption. A bankruptcy court is required to determine whether a debtor has sufficient disposable income to fund a hypothetical Chapter 13 plan in determining whether granting the debtor relief would constitute a substantial abuse under § 707(b). United States v. Koch (In re Koch), 109 F.3d 1285, 1288 (8th Cir. 1997). If the debtor has sufficient disposable income to fund a hypothetical Chapter 13 plan, then the court should dismiss the debtor's Chapter 7 case under § 707(b). Id. And a court may only deduct reasonable housing expenses from the debtor's net income to determine whether the debtor has sufficient disposable income to fund a hypothetical Chapter 13 plan. In re Buntin, 161 B.R. 466, 468-69 (Bankr. W.D. Mo. 1993).

Here, the bankruptcy court found that Debtors' $3,400 monthly mortgage payments were not reasonable under the circumstances. Accordingly, the bankruptcy court's dismissal of Debtors' petition under § 707(b) does not deprive them of the protection of Iowa's homestead exemption.

*C. The bankruptcy court did not err in admitting the testimony of Vandenberg with respect to the reasonableness of Debtors' housing expense.*

Debtors' final argument is that the trial court erred in admitting Vandenberg's opinion testimony that $1,175 per month was the cap on what constitutes a reasonable housing expense. We disagree.

Debtors argue in their brief that the trial court erred in admitting Vandenberg's testimony concerning the maximum reasonable housing expense because he derived

those figures from the Survey. Debtors contend that because the Survey constitutes hearsay under Fed. R. Evid. 801(c) and it does not fall within any of the hearsay exceptions contained in Fed. R. Evid. 803, the trial court should have excluded both Vandenberg's testimony and the Survey under Fed. R. Evid 802. This argument, however, misconstrues the basis upon which the bankruptcy court admitted both Vandenberg's testimony and the Survey.

The bankruptcy court expressly stated in the record that it admitted the Survey so that it could examine the basis of Vandenberg's opinion that $1,175 was the maximum reasonable housing expense. Thus, it appears from the record that the bankruptcy court admitted Vandenberg's testimony as an expert opinion under Fed. R. Evid. 702 and the Survey under Fed. R. Evid. 703 and 705 and not under any of the hearsay exceptions contained in Fed. R. Evid. 803.

Fed. R. Evid. 703 provides that an expert may rely upon opinions or inferences that are themselves not admissible in forming his opinion if those opinions and inferences are relied upon by other experts with respect to the subject matter of the expert's testimony. Thus, Rule 703 permits an expert to rely on hearsay opinion and inferences in forming an opinion provided that the proponent of the expert's testimony establishes that such hearsay opinions and inferences are relied upon by other experts with respect to the subject matter of the expert's testimony. Arkwright Mutual Ins. Co. v. Gwinner Oil Co., 125 F.3d 1176, 1181 (8th Cir. 1997). A reviewing court should review the trial court's determination of whether the proponent has established a sufficient foundation under Rule 703 for an abuse of discretion. Cummins v. Lyle Indus., 93 F.3d 362, 371 (7th Cir. 1996). Further, the Eighth Circuit has opined that the language of Rule 703 is quite broad and courts should liberally construe the Rule. Garnac Grain Co., Inc. v. Blackley, 932 F.2d 1563, 1567 (8th Cir. 1991).

Here, Vandenberg testified that a professor of economics at Iowa State University had utilized the housing expense information contained in the Survey in testifying on behalf of a debtor in a prior case. Vandenberg also testified that the UST office in the Southern District of Iowa has utilized the Survey in determining the reasonableness of expenditures contained in Chapter 13 plans since March 2003. And Vandenberg additionally stated that he had utilized the results from the Survey in testifying in at least one other case. Given this record, we cannot say that the trial court abused its discretion under Rule 703 in admitting Vandenberg's opinion with respect to housing expenses, which was based on the results of the Survey.

Also, it should be noted that Rule 705 provides that the expert may disclose the underlying facts or data upon which he relies during cross-examination by the opponent. Here, Vandenberg testified as to the contents of the Survey only after Debtors attacked his reasonable monthly housing expense figure. Thus, Vandenberg's testimony as to the content of the Survey was proper under Rule 705.

Further, even if we were to find that the bankruptcy court erred in admitting Vandenberg's testimony, such error would be harmless and would not warrant reversal. When a judge in a bench tried case erroneously admits evidence but does not rely on that evidence in its findings of fact, the admission of the evidence is harmless error that does not warrant reversal. Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, 1057 (8th Cir. 1997).

Here, the bankruptcy court expressly found that Debtors' $3,400 per month housing expense was "not reasonable under the circumstances". Thus, although the bankruptcy court admitted Vandenberg's opinion testimony that $1,175 per month was the ceiling on what constitutes a reasonable housing expense, it did not adopt his

bright-line approach.[3]   Thus, even assuming that the bankruptcy court erred in admitting Vandenberg's opinion testimony, such error would be harmless and would not warrant reversal.

IV.

The evidentiary record developed below establishes that Debtors' primary purpose in incurring the debt secured by the Residence was to complete the construction of and to furnish Debtors' family residence.  Thus, the bankruptcy court's factual finding that Debtors' debts are primarily consumer debts is not clearly erroneous.  Also, the bankruptcy court did not deprive Debtors of their rights under Iowa's homestead exemption by granting the UST's motion to dismiss under § 707(b).

The record additionally supports the bankruptcy court's finding that the UST laid a sufficient foundation that the Survey is utilized by other experts in the field in determining the reasonableness of consumer expenditures so that Vandenberg's testimony, which incorporated the results of the Survey, was admissible under Rules 703 and 705.  Further, even if we were to find that the bankruptcy court erred in admitting Vandenberg's testimony, such error would be harmless because the bankruptcy court did not rely on his testimony in finding that Debtors' $3,400 per month housing expense was unreasonable.

---

[3] Debtors contend that the bankruptcy court's decision in the instant case is contrary to an opinion issued by another court within the Southern District of Iowa that rejected the UST's position that the Survey establishes the maximum reasonable housing expense.  As we have noted, the bankruptcy court explicitly found in the record that Debtors' housing expense was unreasonable under the circumstances.  Thus, the record belies Debtors' contention that the bankruptcy court adopted a bright-line rule with respect to the reasonableness of Debtors' housing expenditure.

Accordingly, the judgment of the bankruptcy court is affirmed.

———————————————————